UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JANET U. SUTHERLAND,

                Plaintiff,

-v-

ERIK K. SHINSEKI, SECRETARY,
DEPARTMENT OF VETERANS AFFAIRS,

                Defendant.

Case No. 3:10-CV-148

Judge Thomas M. Rose

_____

ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (Doc. #11) AND TERMINATING THIS CASE
_____

      Plaintiff Janet U. Sutherland ("Sutherland"), an African American female, brings three Title VII discrimination claims arising from her employment at the Dayton Veterans Administration Medical Center (the "Dayton VAMC"). Defendant Erik K. Shinseki, the Secretary of the United States Department of Veterans Affairs (the "VA") is the designated official representing the Department of Veterans Affairs and is answerable in damages, if any, for the claims brought by Sutherland. None of Sutherland's claims are actionable.

      Count One of Sutherland's Complaint is labeled "Hostile Work Environment" in violation of Title VII. Count Two is labeled "Racial Harassment" in violation of Title VII and Count Three is for disparate treatment in violation of Title VII. Finally, although Counts One and Two have different labels, the operative paragraphs are identical.

      Now before the Court is Defendant's Motion for Summary Judgment on each of Sutherland's claims. (Doc. #11.) This Motion is now fully briefed and ripe for decision. A relevant factual background will first be set forth, followed by the standard of review for motions

for summary judgment and an analysis of Defendant's Motion for Summary Judgment.

## RELEVANT FACTUAL BACKGROUND

For purposes of summary judgment consideration, the Court views the facts in a light most favorable to the non-moving party, Sutherland in this case. A brief summary of Sutherland's employment history will be followed by a description of the events upon which she bases her claims.

Sutherland's employment as a social worker with the Veterans Administration began in Chicago in January of 1995. (Deposition of Janet U. Sutherland ("Sutherland Dep.") 10 Aug. 26, 2011.) In February of 1996, she transferred to Dayton. (Id.) In September of 1997, she became the Spinal Cord Injury ("SCI") Coordinator in the SCI Clinic at the Dayton VAMC. (Id.)

Sutherland first contacted an EEO counselor regarding her race discrimination claims on September 9, 2008. (Sutherland Dep. 14-15.) She filed a formal discrimination complaint on December 4, 2008. (Id. at 15.)

Sutherland's formal discrimination complaint listed fifteen (15) different incidents. (Id. at 15-16.) These fifteen (15) incidents are also listed in Sutherland's Complaint.

Following is a summary of the fifteen (15) incidents, each of which is numbered for future reference. Following each of the numbered incidents is further factual information regarding each incident taken from the Rule 56 evidence submitted by the Parties.

> **1. On November 27, 2007, a co-worker, Marlene Davis-Pierce ("Davis-Pierce"), reported that Sutherland illegally parked in a disabled parking space.** Sometime before that, Sutherland had a conversation regarding parking in a disabled parking spot with Davis-Pierce. (Id. at 16.) Davis-Pierce remembers that Sutherland "told me that she had parked - that she had parked in handicapped. And I said, 'Oh, I didn't realize you had a handicapped placard.' And she said, 'No. I don't. I'm using my mothers." (Sworn Statement of Marlene Davis-Pierce ("Davis-Pierce Statement") 9 Apr. 28, 2009.) Davis-Pierce reported Sutherland's actions to Dr. Van Winkle. (Id. at 12.) Dr. Van Winkle

subsequently called Sutherland into his office to discuss why Sutherland should not park in the disabled parking spots. (Sutherland Dep. at 17.) Later, Sutherland had two conversations with David Drew ("Drew"), her immediate supervisor, about the disabled parking spot requirements. (Id. at 18.) Further, while Sutherland agrees that she parked in handicap parking following a surgery, she claims that she did not park in handicap parking as Davis-Pierce suggested. (Id. at 19.) Sutherland complained to Drew that Davis-Pierce discriminated against her by telling other people that Sutherland had parked in handicap parking. (Id. at 23.) No disciplinary action was taken against Sutherland as a result of this incident. (Id. at 24.)

**2. On January 8, 2008, while Sutherland met with a patient, two (2) co-workers, nurses Marlene Davis-Pierce and Margaret Krekumeyer, entered her office on three occasions requesting information regarding spinal cord injury ("SCI") patients.** Davis-Pierce explained that she had a doctor on the phone waiting for an answer to a question that he had e-mailed and called Sutherland about several times, and that she was unable to put the doctor off any longer. (Davis-Pierce Statement 13.) Sutherland read "somewhere" that Drew had spoken with Davis-Pierce about this incident and had counseled her about trying to be more respectful when patients are in someone's office. (Sutherland Dep. 28.)

**3. On January 8, 2008, co-worker Marlene Davis-Pierce commented to Sutherland about Sutherland's salary.** Sutherland later testified that this incident occurred in April or May of 2007. (Sutherland Dep. 30.) This incident occurred when Sutherland was in her office with the door open. (Id. at 31.) According the Sutherland, Davis-Pierce came down the hall yelling, "you make more money than I do and you probably make more money than Carol." (Id.) Davis-Pierce remembers discussing with Sutherland that all SCI coordinators, including Sutherland, were GS-12s and she (Davis-Pierce) was a GS-10. (Davis-Pierce Statement 14.) Davis-Pierce also testified that she had never in her life raised her voice. (Id.) Finally, Sutherland testified that this incident "is when I really noted the behavior change in the attitude toward me from Marlene." (Sutherland Dep. 32.)

4. **On January 9, 2008, a co-worker, Marlene Davis-Pierce, accused Sutherland of violating the Health Insurance Portability and Accountability Act ("HIPPA") guidelines by contacting family members of patients.** Davis-Pierce does not recall this specific incident but does recall incidences where Sutherland was talking to spouses or children of veterans but was sharing "way too much information." (Davis-Pierce Statement 15.) Davis-Pierce accused Sutherland of violating HIPPA but Drew explained that HIPPA violations were within his purview and that Sutherland had not violated these guidelines. (Sutherland Dep. 38.) No action was taken against Sutherland as a result of this incident. (Id. at 39.)

**5. On June 20, 2008, a patient informed Sutherland that Sutherland's co-worker, Marlene Davis-Pierce, said, "She is out of here and, if she comes back, she will not**

-3-

**come back to SCI."** A patient had asked about Sutherland's whereabouts since she had been absent from her job due to surgery. (Declaration of Janet Underwood Sutherland ("Sutherland Decl.") 10 Dec. 30, 2011.) Davis-Pierce denies saying that Sutherland was "out of here." (Davis-Pierce Statement 16.) No action was taken against Sutherland as a result of this incident. (Sutherland Dep. 41.)

**6. On August 8, 2008, Sutherland's co-worker, Marlene Davis-Pierce, accused Sutherland of not arranging for a teleconference.** Davis-Pierce alleged that Sutherland was required to arrange for a teleconference for a veteran but Sutherland says she was not aware of the need for a teleconference. (Sutherland Decl. 11.) Davis-Pierce does not recall this incident. (Davis-Pierce Statement 17.) Sutherland was not disciplined as a result of this incident. (Sutherland Dep. 41-42.)

**7. On August 8, 2008, co-worker Marlene Davis-Pierce interrupted Sutherland's telephone conversation to say that a doctor needed information.** Sutherland identifies two (2) incidents dated August 8, 2008, but later agreed that these two (2) incidents are the same. (Sutherland Dep. 42.) Sutherland went on to testify that, during the course of Davis-Pierce accusing her (Sutherland) of not arranging a teleconference, Davis-Pierce interrupted Sutherland to tell her that a doctor needed information from her. (Sutherland Dep. 42-43.) Sutherland goes on to assert that Davis-Pierce lied that Dr. Bashir was trying to call her and, because there was a block on the phone, he could not get through. (Id. at 43.)

**8. On August 18, 2008, during Sutherland's conversation with a patient, Dr. Strayer reminded her of a meeting and said, "If you are having trouble ending a session, then get with me this afternoon and I'll tell you how."** Dr. Strayer denies the quote attributed to him by Sutherland. (Witness Affidavit of Dr. Jonathan Strayer ("Strayer Aff.") 3 May 11, 2009.) Further, Dr. Strayer testified that he had scheduled ad hoc meetings at a location near Sutherland's office and, in addition, had scheduled meetings for the first and third Mondays of the month. (Id.) Dr. Strayer also testified that, "we" have a lot of difficulty getting Sutherland to attend meetings. (Id.) Yet, Sutherland testifies that the staff in her department were making and holding meetings without her, and "if I were to attend the meetings, and it was made known to me, I would have attended." (Sutherland Dep. 46.)

**9. On September 4, 2008, Dr. Strayer and a co-worker accused Sutherland of not following up on scheduled appointments for veterans.** Sutherland did not remember the details of this incident during her deposition but in the Declaration that she submitted following the filing of Defendant's Motion for Summary Judgment, she indicates that Dr. Strayer faulted her for his failure to reschedule veterans for follow up medical appointments when she views the problem as one that Dr. Strayer has created. (Sutherland Decl. 14.) She also states that she was not responsible for scheduling appointments at that time and that she became "clinically depressed." (Sutherland Decl. 15.)

**10. On September 4, 2008, Sutherland was late for a meeting and Davis-Pierce accused her of not responding to a page broadcast over the public announcement system.** Sutherland testified that the two (2) incidents identified as occurring on September 4, 2008, are combined and basically the same. (Sutherland Dep. 55-56.) In her declaration filed after Defendant's Motion for Summary Judgment was filed, Sutherland testifies that the correct date of this incident is September 12, 2008. (Sutherland Decl. 15.) Sutherland was overhead paged by Margaret Krekumeyer for a meeting that Sutherland had forgotten about. (Id. at 60.) When she arrived for the meeting, Davis-Pierce accused her of not responding to Davis-Pierce's page. (Sutherland Dep. (Id. at 59-60.) Sutherland later testified that the correct date of this incident was September 12, 2008. She also describes the incident differently. (Sutherland Decl. 15.) According to Sutherland, an impromptu meeting was requested by Dr. Strayer about which Sutherland was not informed until the morning of the meeting. (Id.) Sutherland left the area for a cup of coffee and, upon return, was approached by an angry Davis-Pierce. (Id.) Davis-Pierce, according to Sutherland, wanted to disgrace her in a public meeting. (Id.)

**11. On January 22, 2009, a co-worker accused Sutherland of leaving the SCI Clinic for two (2) hours.** That morning, Davis-Pierce made Sutherland aware that a patient had soiled himself. (Sutherland Dep. 64.) Since Davis-Pierce thought it was too cold for hospital pajamas, Sutherland elected to get clothing from the clothing room. (Id.) Sutherland testified that she left to pick up the clothing at 10:30 a.m. and returned around 11:00 a.m. Dr. Strayer came out of an exam room and accused Sutherland of being gone for two (2) hours. Dr. Strayer filed a grievance against Sutherland which led to a meeting between her and Drew. (Sutherland Decl. 18.) Drew found that Sutherland had not been away from the clinic for two (2) hours as reported. (Sutherland Dep. 76.) However, an admonishment was placed in Sutherland personnel file for two years. (Id.) Sutherland was admonished for failing to make a patient aware of his appointment time. (Sutherland Dep. 76.)

**12. On January 26, 2009, Jeff Haney, acting as a human resources official asked Sutherland to give out confidential information.** Jeff Haney came to Sutherland's office to investigate the events of January 22, 2009. (Sutherland Decl. 20.) Haney is the Administrative Support Supervisor and not a human resources employee. (Id.) Sutherland viewed Haney as a colleague asking for information about a personal, confidential incident and was offended. (Sutherland Dep. 69-70.)

**13. From August 2008 to February 2, 2009, Sutherland experienced repeated challenges about the method she used to obtain the figures provided in the Spinal Cord Injury Report of the VISN 10 Meetings.** In her Deposition, Sutherland specifically refers to a meeting in August 2009 in Cincinnati where she reported these statistics and Davis-Pierce challenged them. (Sutherland Dep. 79.) Although Sutherland asserts that the numbers were accurate, she has since developed a new and more accurate way of calculating the numbers. (Id. at 80-84.)

**14. On February 12, 2009, Dr. Strayer stated that Sutherland's progress report was the reason that a patient did not receive needed additional hours of care.** This incident regards the progress of a patient and not the progress of Sutherland. (Sutherland Dep. 88-89.) Sutherland told a patient that the VA did not provide the level of care that the patient requested and documented that information in the patient's file. (Id. at 89.) According to Dr. Strayer, Sutherland's report used language that did not correctly reflect the patient's condition. (Strayer Aff. 4.) During a meeting with Dr. Strayer and the patient, Sutherland was called into Dr. Strayer's office to discuss this problem. (Id.) The patient's needs were correctly determined and the patient received the additional home care that he needed. (Id.) Sutherland felt that it was not in anyone's best interest to have the conversation regarding her report in front of the patient. (Sutherland Dep. 89-91.) No action was taken against Sutherland as a result of this incident. (Id. at 93.)

**15. On March 2, 2009, Doctor Strayer asked Sutherland to present the minutes for a prior meeting that she had not attended.** Sutherland was in attendance at a meeting and Dr. Strayer asked her to give the minutes from the previous meeting. (Sutherland Dep. 94.) However, according to Sutherland, she had not attended any previous meetings. Dr. Strayer testifies that he had difficulty getting Sutherland to attend meetings and he would never ask anyone to write minutes for a meeting that they did not attend. (Strayer Aff. 4.) No action was taken against Sutherland as a result of this incident. (Sutherland Dep. 100-01.)

At the time of her deposition on August 26, 2011, Sutherland was still employed as the Spinal Cord Injury Coordinator at the VAMC. (Sutherland Dep. 11-12.) Sutherland testifies that she lost work in 2008, 2009 and 2010 because there were times when she was under stress because of accusations and fabrications and because she felt her integrity was always at jeopardy. (Id. at 111-21.) .

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A

Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, declarations, stipulations, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c)(1)(A).

## ANALYSIS

Sutherland brings three (3) claims for relief. Each will be addressed seriatim.

The Defendant argues that five (5) of Sutherland's complaints must be dismissed and that punitive damages are not recoverable in this case. These two issues will also be addressed.

### Timely Exhaustion of Administrative Remedies

The Defendant argues that the first five (5) incidents identified as bases for Sutherland's complaints must be dismissed because they were not timely filed. Sutherland responds that the

doctrines of equitable estoppel and equitable tolling apply and these five (5) incidents be considered.

"The right to bring an action under Title VII regarding equal employment [opportunity] in the federal government is predicated upon the timely exhaustion of administrative remedies, as set forth in [the EEOC regulations]." *Hunter v. Secretary of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009)(quoting *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991)). The EEOC regulations require an aggrieved employee to initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory. *Id.* However, the doctrines of waiver, equitable estoppel and equitable tolling apply to the 45-day time limit. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397 (1982).

Sutherland received training in employment discrimination on an annual basis and was aware of the requirement that she had to contact an EEO counselor within 45 days to complain about any action that she believed was discriminatory. (Sutherland Dep. 12-14.) Yet, Sutherland testified that she did not contact the EEOC counselor until September 9, 2008. (Id. at 14-15.)

Sutherland testified that she filed her first five (5) complaints within the specified time frame. (Sutherland Decl. 23.) Her basis for this assertion is that she claims to have filed a "Report of Contact #119" within the required time frame. (Id.) However, none of the individuals with whom Sutherland claims to have filed a "Report of Contact #119" are EEOC counselors as required by EEOC regulations.

In addition to arguing that she timely made the complaints in question, Sutherland argues that the doctrines of waiver, equitable estoppel and equitable tolling should apply in this case. While these doctrines may be available, Sutherland has not shown, as required by law, that any

misconduct on the part of the Defendant prevented her from filing her complaints with an EEOC counselor in a timely fashion. Thus, these doctrines are not available in this case.

The first five (5) incidents occurred more than 45 days before September 9, 2008, and neither of the doctrines of waiver, equitable estoppel or equitable tolling apply. Thus, Sutherland did not exhaust her administrative remedies, as required by the EEOC regulations, regarding the first five (5) incidents, and those first five (5) incidents may not be considered.

## Hostile Work Environment

Sutherland alleges that Defendant Eric K. Shinseki, the agency physicians, management personnel and co-workers have created a pervasive, racially hostile work environment in violation of Title VII. The Defendant responds that Sutherland cannot establish a prima facie case of hostile work environment.

Title VII protects employees from a "workplace [ ] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment…" *Barrett v. Whirlpool Corporation*, 556 F.3d 502, 514 (6th Cir. 2009)(quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). Conduct that is not severe or pervasive enough to create an objectively and subjectively hostile or abusive work environment is not protected by Title VII. *Id.*

To defeat a motion for summary judgment, Sutherland must identify direct or circumstantial evidence of a hostile work environment. *Id.* Direct evidence is evidence that, if believed, dictates a finding, with no need to draw inferences, that unlawful discrimination was at least a motivating factor in the employer's actions. *Id.* at 515. In this case, Sutherland has not identified evidence that dictates a finding of a hostile work environment without drawing

-10-

inferences. Thus, she has identified circumstantial evidence.

Where a plaintiff relies upon circumstantial evidence, the *McDonnell Douglas* burden shifting framework is used. *Id.* Using the McDonnell Douglass burden shifting framework, Sutherland must first identify evidence of a prima facie case of hostile work environment. *Id.*

The elements of a prime facie case of hostile work environment are: (1) the plaintiff is a member of a protected class; (2) the plaintiff was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with the plaintiff's work environment by creating an intimidating, hostile or offensive work environment; and (5) the employer is liable. *Id.*

In this case, the Defendant argues that Sutherland cannot establish the third and fourth elements of her hostile work environment claim. Therefore, each of these two elements will be examined.

### Harassment Based On Race

To satisfy the third element of her hostile work environment claim, Sutherland must present evidence that the harassment was based upon race. Sutherland testified that the primary reason that the alleged incidents occurred was because she was the only African-American in the SCI Clinic. (Sutherland Dep. 107.) She also testified that she thinks that if she was Caucasian, the incidents would not have occurred. (Id. at 108.) She was uncomfortable with the tone of voice, demeanor and questioning that is always addressed to her. (Id. at 108-09.) She also mentions discrimination in other areas of the Dayton VAMC. However, all of the other individuals accused by Sutherland of subjecting her to a hostile work environment deny that any of their actions were taken because of her race. (Strayer Aff. 2, 4; Davis-Pierce Statement 7-8.)

While Sutherland thinks that the primary reason that the alleged incidents occurred was because she was African-American, there is simply no evidence that the alleged harassment was based upon race. Thus, Sutherland has not satisfied the third element of her hostile work environment claim.

Creation of Intimidating, Hostile Or Offensive Work Environment

To satisfy the fourth element of her hostile work environment claim, Sutherland must show that the alleged harassment unreasonably interfered with her work environment by creating an intimidating, hostile or offensive work environment. This she cannot do.

To satisfy the fourth element of a hostile work environment claim, a plaintiff must show that the alleged harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 707 (6th Cir. 2007)(citing *Williams v. General Motors Corp.*, 187 F.3d 553, 560, 562 (6th Cir. 1999)). In making a determination of whether the conduct complained of is severe or pervasive, the Court examines the totality of the circumstances and considers the frequency of the alleged discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Barrett v. Whirlpool Corp.*, 556 F.3d 501, 515 (6th Cir. 2009)(citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). Further, simple teasing, offhand comments and isolated incidents, unless extremely serious, do not amount to discriminatory changes in the terms and conditions of employment. *Id.*

The Sixth Circuit has offered several examples of conduct that is not found to be severe or pervasive. In *Clay*, the Sixth Circuit affirmed the district court's grant of summary judgment

on a hostile work environment claim where the plaintiff alleged fifteen (15) specific incidents over a two-year period, including her supervisor's criticism for leaving her work station to get a cup of coffee, for using the bathroom at the end of her break, for eating during work and for the size of her earrings. *Clay*, 501 F.3d at 702, 707. In *Goller*, the Sixth Circuit affirmed the district court's grant of summary judgment on a hostile work environment claim finding that alleged derogatory name-calling by a supervisor was not sufficiently severe or pervasive. *Goller v. Ohio Department of Rehabilitation and Correction*, 285 F. Appx. 250, 252, 259 (6th Cir. 2008). Finally, in *Batuyong*, the Sixth Circuit affirmed the district court's grant of summary judgment on a hostile work environment claim finding that allegations that her supervisor repeatedly raised his voice, became verbally abusive, chastised her in front of others, refused to allow her to attend a conference and denied her travel expenses to an event were not severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive. *Batuyong v. Gates*, 337 F. Appx. 451, 457-58 (6th Cir. 2009).

Even if all fifteen (15) incidents are considered[1], which they may not be, they occurred over a sixteen (16) month time frame. Thus, the alleged frequency is low. Further, the alleged conduct was not physically threatening. Finally, none of the incidents complained of interfered with Sutherland's work performance. She received no disciplinary actions related to any of the

---

[1] In addition to the fifteen (15) incidents, Sutherland makes reference in her Affidavit, submitted with her Response to Defendant's Motion for Summary Judgment, to incidents that occurred in September 2010, November 2010 and from November 2010 through May of 2011. (Sutherland Aff. 8, 25-30.) However, these incidents are beyond the scope of this case which was filed in April of 2010. Further, the EEO Manager for the Dayton VAMC affirms that Sutherland filed informal complaints in 2010 and 2011 but did not complete the administrative process for any of these claims. (Affidavit of Sharon Lange ¶¶ 3, 4 Jan. 20, 2012.) Therefore, none of these additional incidents are considered.

alleged incidents. Rather, the incidents involved workplace-related matters and business decisions concerning Sutherland's job responsibilities.

Thus, Sutherland has not presented evidence that, even if all fifteen (15) alleged incidents are assumed to be true, the incidents were severe or pervasive enough to constitute an objectively hostile work environment. Sutherland has not identified evidence to satisfy the fourth element of a racially hostile work environment claim.

Sutherland has not identified evidence to satisfy two of the elements of a racially hostile work environment claim. As a result, there are no genuine issues of material fact and the Defendant is entitled to judgment as a matter of law on Count One of Sutherland's Complaint for creating a racially hostile work environment.

**Racial Harassment**

Count One of Sutherland's Complaint is labeled "Hostile Work Environment" and Count Two is labeled "Racial Harassment" but the operative paragraphs in both of these two claims are identical. Further, although summary judgment is sought on Count Two, the Defendant identifies no caselaw beyond that which is applicable to Count One. Also, Sutherland has identified no additional caselaw and offers no argument separate from the argument offered in opposition to summary judgment on Count One. Finally, the Court is unable to find any caselaw for a "racial harassment" claim beyond the caselaw set forth under Count One for hostile work environment.

Thus, the Court concludes that Count One and Count Two of Sutherland's Complaint are the same. Further, the same evidence and the same law applies. Thus, the result is the same. There are no genuine issues of material fact and the Defendant is entitled to judgment as a matter of law on Count Two of Sutherland's Complaint for racial harassment.

**Disparate Treatment**

Sutherland alleges that Shinseki, the agency physicians, management personnel and co-workers have permitted, and/or authorized and/or mandated disparate treatment in which similarly situated Caucasian employees are treated more favorably than her in violation of Title VII. The Defendant responds that Sutherland cannot establish a prima facie case of race discrimination/disparate treatment and that all of his actions were taken for legitimate business reasons and were not a pretext for unlawful discrimination.

A plaintiff may prove that she was subjected to disparate treatment based on race using either direct or circumstantial evidence. *Chen v. Dow Chemical Company*, 580 F.3d 394, 400 (6th Cir. 2009). Where, as here, there is no direct evidence of discrimination, the plaintiff's circumstantial evidence is analyzed under the McDonnell Douglas burden-shifting framework. *Id.*

Under the McDonnell Douglas burden-shifting framework, the burden is first on the plaintiff to show a prima facie case of race discrimination. *Id.* The burden then shifts to the employer to offer a legitimate, non-discriminatory reason for its actions. *Id.* Finally, the burden shifts back to the plaintiff to show that the employer's legitimate, non-discriminatory reason is a pretext for discrimination. *Id.*

To show a prima facie case of race discrimination, Sutherland must show that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone else outside the protected class or was treated differently than similarly situated, non-protected employees. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, (6th Cir. 2006).

In this case, Sutherland states that she feels that she was treated differently than non-protected employees because of her race in the fifteen (15) incidents discussed above. In addition to her feelings, Sutherland has presented the Declaration of Barbara Jackson ("Jackson").

Jackson is now retired but was the Administrative Support Assistant for Rehabilitation Service at VAMC from October 1995 through June 2010. (Declaration of Barbara Jackson ("Jackson Decl.") 1 Dec. 30, 2011.) Jackson testifies that, on at least two occasions, she overheard Dr. Pamela Mishler accuse Sutherland of being incompetent and not knowing what she was doing.

However, even considering Jackson's Declaration, which is irrelevant to any of the fifteen (15) incidents about which Sutherland complains, Sutherland has presented no evidence that she was treated differently than similarly situated, non-protected employees. Therefore, Sutherland has not shown a prima facie case of race discrimination and the Defendant is entitled to summary judgment on Sutherland's disparate treatment claim on this basis.

Next, the Parties present argument about legitimate, non-discriminatory reasons for adverse employment actions and pretext. However, the Court cannot reasonably analyze these arguments because Sutherland has not presented evidence that she was subjected to an adverse employment action as a result of any of the fifteen (15) incidents about which she complains.

The one adverse employment action that Sutherland discusses is the admonishment she received which has not been removed from her file. However, this admonishment is related to Sutherland's failure to properly coordinate an appointment for a Spinal Cord Injury Clinic patient (Affidavit of David Drew ¶ 3 Jan. 23, 2012) and was not issued as a result of any of the fifteen (15) incidents about which Sutherland complains. Further, Sutherland admitted in her

Deposition that she did not make an EEOC claim regarding not being able to receive any training as a result of the letter of admonishment. (Sutherland Dep. 102-04.)

## Punitive Damages

Sutherland seeks punitive damages for her Title VII claims. However, a government, a government agency and a political subdivision are specifically exempt from punitive damages in Title VII cases. 42 U.S.C. § 1981a(b)(1).

The VA is a government agency. Therefore, the VA is exempt from paying punitive damages for Sutherland's Title VII claims. As a result, Sutherland's punitive damage claims against the VA are dismissed.

## SUMMARY

Sutherland complains about fifteen (15) incidents. However, only ten (10) of them may be considered because Sutherland did not timely exhaust her administrative remedies regarding the other five (5).

Even if all fifteen (15) incidents were considered, Sutherland has not identified evidence that satisfies at least two of the elements of a racially hostile work environment claim. Further, since Count One and Count Two of Sutherland's Complaint are the same and thus the same evidence and the same law applies, the results are the same. In addition, Sutherland has not identified evidence that satisfies at least one of the elements of a disparate treatment/race discrimination claim. Finally, if successful on any of her claims, Sutherland would not be entitled to punitive damages.

Therefore, there are no genuine issues of fact and the Defendant is entitled to judgment as a matter of law on all three of Sutherland's claims. The Defendant's Motion for Summary

Judgment (doc. #11) is GRANTED, and the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

      **DONE** and **ORDERED** in Dayton, Ohio this Ninth day of February, 2012.

                                                **s/Thomas M. Rose**
                                      _____
                                                  THOMAS M. ROSE
                                    UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record